Our next case for argument this morning is Lumpkin v. Berg. So let's see, we have Mr. Aquino, not Mr. All right, there's Mr. Witwer. Okay, we're ready in Lumpkin v. Berg. Mr. Aquino. Good morning, your honors. May it please the court, Tom Aquino for the appellant James Lumpkin. In this ineffective assistance of counsel case, the Wisconsin courts applied a highly likely test that focused on the likelihood of conviction rather than the likelihood of acquittal if counsel had performed effectively. This was contrary to Strickland's demands that holds that prejudice is when there's a reasonable likelihood that a jury would find a reasonable doubt as to the defendant's guilt and for the court to consider the entire evidentiary picture. You know, in this case, there were if the state's only witness of Mr. Lumpkin dealing drugs was properly impeached and discredited, the only evidence against Mr. Lumpkin was in the state court's own words, the amount, or excuse me, not the amount, but the way that the drugs were packaged in the significant amount of cash that was carrying at the time. Now, there was no testimony that the manner of packaging was inconsistent with personal use. Again, there was no testimony that the amount of drugs that Mr. Lumpkin was carrying was inconsistent with personal use. But does there have to be, isn't that just argument? Isn't that just argument that the state can make to the jury and the jury can make those findings based on common sense? Right. Yes. And the question is whether there's a reasonable probability that a jury would find those arguments unavailing because that there wasn't any other corroborating evidence that he was dealing drugs. The amount of drugs, so again, this is not a case where we're arguing there's insufficient evidence to convict him. This is a case where we're saying that there was a reasonable probability that a jury would find the state failed to meet its burden of proving his guilt beyond a reasonable doubt. The amount of drugs that he was carrying, again, I did the math. Again, none of the state's witnesses said that this was inconsistent with personal use or there was a distributive amount. He was found with 2.2 grams of heroin in 22 packets. That's found on pages 180 to 184 and 191 to 192 of the first day of trial. One of the other witnesses testified that his habit at that time was two to three of these packets per day. So those 2.2 grams would last you seven to 11 days if you do the math. This is not an amount that's inconsistent with personal use. That's found on page 227 on the first day of trial. So if this were to go to trial and with the witness properly impeached, that's all the state would have. The state would not have any eyewitnesses of Mr. Lumpkin actually engaging in any activities consistent with drug dealing. Nothing like him approaching a car, sticking his head in for a few minutes and then leaving. There were no telephone or text messages consistent with him dealing drugs. The only text message they had that he was involved in where he says 300 or where the witness texts him says 300 so full and he responds cool. The state depended on her testimony to explain that this meant that she was trying to buy a full gram of heroin. So again, there's nothing, no text messages independently tying him to drug dealing compared to the text messages of this witness that the trial counsel failed to introduce where her customers are complaining about the weight of what she had sold them. There was also nothing, no tools of the trade found when he was arrested. There were no scales. There were no baggies. He wasn't found with any weapons. This is a case where, frankly, if they didn't have Souter, this witness at all, this probably would have never gone to trial. It would have been settled for just prejudice counts. The state depended on Souter for this probability that a jury would find that the state hadn't met its burden because, again, there was no evidence that any of the drugs, whether the amount, whether the packaging or even his amount, the cash that he had was inconsistent with personal use. So the court's decision, again, was contrary to Strickland because it, in the end, adopted this highly likely standard where the court focused on how it was highly likely that a jury would still find the necessary intent to distribute based on this evidence. Well, that turns the standard on its head. The Strickland case was very clear that the focus is on the likelihood of acquittal. And it's certainly possible for there to both be a high likelihood of conviction but also a reasonable probability of acquittal. And when there is that circumstance, Strickland is clear that there's been a violation of the Sixth Amendment and the defendant is entitled to a new trial. Now, I've focused so far on the prejudice standard because that's how we lost in the Wisconsin courts. But we also raised that while the Wisconsin courts found that some of the trial counsel was somewhat deficient for not introducing the prior convictions of the witness and the factors on probation and all of her statements evincing her willingness to lie to the police, they said that the court said it was, did not find counsel ineffective for not introducing her inconsistent statements as well as all of her drug dealing activities. For all the reasons you laid out in the brief, this was unreasonable. It's just there's no reason not to introduce all of these inconsistent statements, the fact that she was dealing drugs to show that she was not a witness to be trusted. And if the jury had a full picture of what this witness's credibility was, there is a reasonable probability that they would have acquitted Mr. Lumpkin. And I would like to reserve the rest of my time for rebuttal. The court has no questions at this time. Sure. Mr. Aquino. Mr. Whitworth. May it please the court, Assistant Attorney General for Respondent, Jake Whitworth for Respondent Berg. The Wisconsin Court of Appeals decision in this case was a reasonable application of Strickland v. Washington. The Court of Appeals took Mr. Lumpkin's claims very seriously. It concluded that counsel was deficient in some respects in not using certain impeachment information but had reasonable strategic reasons not to raise other information. After making that determination, it threw out one of the convictions, the one that relied primarily on the testimony of Ms. Souter, because that was affected by Ms. Souter's credibility. And so the Court of Appeals reversed as to that count but affirmed as to the other counts, concluding that there was no prejudice. Now, the Court of Appeals, in analyzing prejudice, got it wrong the first two times that it issued its opinions. And to its great credit, I think, withdrew its opinions and issued finally a third opinion that applied the correct standard. And I think on habeas review, the examination should be of the last reasoned decision of the Court here. It's the one that applied the correct standard. Contrary to Mr. Lumpkin's arguments, there was nothing that was contrary to Strickland in its recitation of the standard. It applied a reasonable probability of a different outcome in its final analysis. And here, I think that analysis is reasonable because Mr. Lumpkin was found with 31, excuse me, 21 baggies of heroin for individual sale and several baggies of cocaine for individual sale as well, and a roll of bills over $1,000 in small bills on his person. In addition to that, Mr. Lumpkin downplays this, but there were the jail calls also that demonstrated that further consciousness of guilt and further discussion of, at one point, of whether the amount of drugs that he was found with was large or not. Also, there was evidence that one of his friends knew him to carry a lot of cash and never knew him to have a job. There was, I think, that applying the reasonableness standard, this Court should conclude that the Wisconsin Court of Appeals decision was a reasonable application of Strickland. If there are no questions, I will just ask that the Court affirm the District Court's judgment. All right. Thank you, Mr. Whitmer. Anything further, Mr. Requeno? Yes, Your Honor. First, the fact that the Wisconsin Court of Appeals did find in Mr. Lumpkin's favor does not mean the whole decision is in Mr. Lumpkin's favor. The reason why Mr. Lumpkin prevailed on the one count is because the Court had applied the incorrect sufficiency of the evidence standard with respect to his charge of distributing to Ms. Souter. The Court essentially said, without her testimony, there was no evidence of this distribution, so they found prejudice. So the fact that Mr. Lumpkin should not be penalized, that he was able to satisfy this artificially or incorrectly more difficult standard with respect to the distribution charge. And as far as the evidentiary issues the State raises, the jail calls, you know, the State does it cite to them, but the Court can find them on pages 247 to 253 of day one of trial, which is docket 10-1. And all Mr. Lumpkin says in those jail calls is he acknowledges that he was found with drugs on his possession. There's nothing in his commentary or in any of his statements suggesting that he was dealing those drugs. It was just an acknowledgement that he got found with drugs in his possession. And if there are no questions, then I would just ask the Court to find that the Wisconsin Court unreasonably, or that Mr. Lumpkin is entitled to habeas relief based on the violation of the Sixth Amendment right to counsel. Thank you, Mr. Aquino. The case is taken under advisement.